Noel L. Hillman
Christopher Walsh
J. Brugh Lower
**GIBBONS P.C.**
One Gateway Center
Newark, New Jersey 07102
(973) 596-4500

*Attorneys for Plaintiffs*
*Novo Nordisk A/S and*
*Novo Nordisk Inc.*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NOVO NORDISK A/S and NOVO NORDISK INC., <br><br>                Plaintiffs, <br><br>      v. <br><br> TRANSFORMATIONAL HEALTH CENTERS LLC, <br><br>            Defendant. | Civil Action No. 2:24-cv-10395 |

## COMPLAINT

Plaintiffs Novo Nordisk A/S ("Novo Nordisk" or "NNAS") and Novo Nordisk Inc. ("NNI") (collectively, "Plaintiffs" or "Novo Nordisk") for their complaint for false advertising and unfair and deceptive trade practices seeking injunctive and other relief against Defendant Transformational Health Centers LLC ("Defendant") hereby allege as follows, on actual knowledge with respect to themselves and their own acts and on information and belief as to all other matters.

## INTRODUCTION

1.      Novo Nordisk is a healthcare company with a 100-year history of innovation in developing medicines to treat serious chronic diseases like diabetes and obesity.

2.      The development of semaglutide is an example of Novo Nordisk's commitment to innovation for those living with chronic diseases. Semaglutide is the foundational molecule that serves as the primary ingredient for Novo Nordisk's three prescription-only medicines approved by the Food and Drug Administration ("FDA"):  Ozempic® (semaglutide) injection and Rybelsus® (semaglutide) tablets for adults with type 2 diabetes and Wegovy® (semaglutide) injection for chronic weight management.

3.      Novo Nordisk is the only company in the United States with FDA-approved medicines containing semaglutide.

4.      Novo Nordisk is also the only company authorized to identify its FDA-approved semaglutide medicines using the trademarks Ozempic®, Wegovy®, and Rybelsus®.

5.      The FDA has not approved any generic version of semaglutide.  To the contrary, the FDA has sent warning letters to companies that have claimed that their unapproved products have the "[s]ame active ingredient as Ozempic, Rybelsus and Wegovy," noting that Ozempic and Wegovy are the only "two injectable semaglutide products FDA-approved for the U.S. market."[1]

6.      This action is brought pursuant to the Lanham Act, 15 U.S.C. §§ 1051 *et seq.*, related state laws, and the common law arising out of Defendant's acts of false advertising and unfair and deceptive trade practices, and Plaintiffs' rights in their Wegovy®, Ozempic®, and Rybelsus® marks.

---

[1] FDA – Warning Letter to Ozempen.com, MARCS-CMS 684435 — JUNE 24, 2024, https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-letters/ozempencom-684435-06242024.

7.     Defendant markets and sells to patients compounded drug products that purport to contain semaglutide.

8.     Even though such compounded drug products have not been evaluated by the FDA for their safety, effectiveness, or quality, Defendant falsely and misleadingly represents to patients that its products are FDA-approved or the same as, or equivalent to, Novo Nordisk's FDA-approved semaglutide medicines.

9.     Defendant's conduct is likely to confuse and deceive patients into mistakenly believing that they are purchasing authentic Novo Nordisk medicines or medicines that have been evaluated by the FDA, studied in clinical trials, and deemed safe and effective.

## THE PARTIES

10.     Plaintiff NNAS is a corporation organized and existing under the laws of the Kingdom of Denmark and has its principal place of business at Novo Alle 1, 2880 Bagsvaerd, Denmark.

11.     Novo Nordisk developed the Ozempic®, Wegovy®, and Rybelsus® medicines.

12.     NNAS has granted to Plaintiff NNI exclusive rights to market, advertise, promote, offer for sale, and sell Ozempic®, Wegovy® and Rybelsus® medicines in the United States.

13.     NNI is a corporation organized and existing under the laws of Delaware and has its principal place of business at 800 Scudders Mill Road, Plainsboro, New Jersey 08536.

14.     NNI promotes, offers, and sells Novo Nordisk's Ozempic® , Wegovy® and Rybelsus® medicines throughout the United States, including in this District.

15.     Defendant Transformational Health Centers LLC is a New Jersey limited liability company with a principal place of business at 375 Route 10, Suite 2, Whippany, New Jersey 07981 in this judicial district.

16.     Defendant sells and promotes compounded drug products that purport to contain semaglutide.

17.     Defendant's semaglutide products are not approved by the FDA ("Unapproved Compounded Drugs").

18.     Defendant falsely claims or otherwise misleadingly suggests that its Unapproved Compounded Drugs as Ozempic®, Wegovy® and Rybelsus® medicines.

## JURISDICTION AND VENUE

19.     The Court has subject matter jurisdiction over the Lanham Act cause of action pleaded herein pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a).

20.     The Court has supplemental jurisdiction over the common law cause of action pleaded herein pursuant to 28 U.S.C. § 1338(b).

21.     Defendant is subject to personal jurisdiction in this District because Defendant is a New Jersey  limited liability company and has a principal place of business in New Jersey.

22.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendant resides and operates in this District, manufactures and sells its compounded drug products that purport to contain semaglutide in this District and otherwise conducts business in this District.

## NOVO NORDISK'S FDA-APPROVED SEMAGLUTIDE MEDICINES AND OZEMPIC® , WEGOVY® AND RYBELSUS® TRADEMARKS

23.     Plaintiffs use the trademarks "Ozempic," "Wegovy," and "Rybelsus" to identify and promote the FDA-approved Ozempic®, Wegovy®, and Rybelsus® medicines.  The Ozempic®, Wegovy®, and Rybelsus® medicines are sold and marketed in the United States by NNAS's indirect, wholly-owned subsidiary, NNI.

24.     The Ozempic® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise, and also lowers the risk of major

cardiovascular events such as stroke, heart attack, or death in adults with type 2 diabetes and known heart disease.

25.     The Wegovy® medicine is indicated to reduce excess body weight and maintain weight reduction long term in adults and children aged 12 years and older with obesity, and some adults who are overweight and have weight-related medical problems, along with a reduced calorie diet and increased physical activity.

26.     The Wegovy® medicine is also indicated, with a reduced calorie diet and increased physical activity, to reduce the risk of major adverse cardiovascular events such as "cardiovascular" death, heart attack, or stroke in adults with heart disease and who are either obese or overweight.

27.     The Rybelsus® medicine is indicated for adults with type 2 diabetes to improve blood sugar (glucose), along with diet and exercise.

28.     The Ozempic®, Wegovy®, and Rybelsus® medicines have been studied in clinical trials and are FDA-approved.

29.     Each of the Ozempic®, Wegovy®, and Rybelsus® medicines has a unique safety and efficacy profile which is set forth in its respective product label.

30.     The Ozempic®, Wegovy®, and Rybelsus® medicines are prescription-only medicines that should  be prescribed only in direct consultation with, and under the supervision of, a licensed healthcare professional.

**DEFENDANT'S SALE OF UNAPPROVED COMPOUNDED DRUGS**

31.     Novo Nordisk does not sell its FDA-approved semaglutide medicines, Ozempic®, Wegovy®, and Rybelsus® to Defendant for resale or redistribution.

32.     Defendant markets and sells to patients Unapproved Compounded Drugs that purport to contain semaglutide.

33.     The FDA has not approved Defendant's semaglutide products.

34.     On information and belief, the Unapproved Compounded Drugs sold by Defendant are made by compounding pharmacies, which deliver them either directly to patients or to Defendant for administration or dispensing to patients.

35.     The FDA defines compounding as a "practice in which a licensed pharmacist, a licensed physician, or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient."[2]

36.     According to the FDA, "[c]ompounded drugs are not FDA-approved. This means that FDA does not review these drugs to evaluate their safety, effectiveness, or quality before they reach patients."[3]

37.     The FDA has further stated that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs. Unnecessary use of compounded drugs unnecessarily exposes patients to potentially serious health risks."[4]

38.     As the FDA has explained, "[c]ompounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.  Compounded drugs should only be used for patients whose medical needs cannot be met by an available FDA-approved drug."[5]

---

[2] Human Drug Compounding, https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding.
[3] Compounding Laws and Policies, https://www.fda.gov/drugs/human-drug-compounding/compounding-laws-and-policies.
[4] Compounding and the FDA: Questions and Answers, https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers.
[5] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.

39.    The process used to produce most "semaglutide" used in compounding is fundamentally different from the process used to produce the semaglutide in Novo Nordisk's FDA-approved medicines.  Novo Nordisk manufactures the semaglutide in its medicines, pursuant to its FDA approval, in yeast cells under a closely controlled multistep process that uses recombinant DNA technology.  Most compounded "semaglutide," however, uses a "semaglutide" manufactured via chemical synthesis.  The fundamental differences between these processes have resulted in new impurities, higher levels of known impurities, immunogenicity concerns, and potential stability issues in tested samples of compounded "semaglutide."[6]

40.    The FDA has received reports of adverse events, some requiring hospitalization, related to overdoses from dosing errors associated with compounded "semaglutide" products.[7] Based on data as of September 30, 2024, the FDA's Adverse Event Reporting System (FAERS) database includes 619 cases of adverse events associated with compounded "semaglutide"— nearly triple the number of adverse events for *all* compounded drugs in 2022.[8]  Of those 619 cases, the FDA classified 446 as "serious" adverse events, 144 as requiring hospitalization, and twelve as involving deaths.  In several instances, patients mistakenly administered five to 20 times more than the intended dose of compounded "semaglutide."

41.    The FDA has stated that the containers and packaging (including multidose vials and prefilled syringes) used by compounders such as Defendant, the varying product

---

[6] Morten Hach *et al*, Impact of Manufacturing Process and Compounding on Properties and Quality of Follow-On GLP-1 Polypeptide Drugs, Pharm. Res., (Oct. 8, 2024), *available at* https://pubmed.ncbi.nlm.nih.gov/39379664/.
[7] FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded.
[8] FDA Adverse Event Reporting System (FAERS) Public Dashboard, https://www.fda.gov/drugs/questions-and-answers-fdas-adverse-event-reporting-system-faers/fda-adverse-event-reporting-system-faers-public-dashboard (last visited October 31, 2024).

concentrations, and the instructions accompanying the compounded drug contribute to the potential medical errors.

42.     A previous publication from the Journal of the American Pharmacists Association also highlighted errors where patients accidentally self-administered doses of compounded "semaglutide" up to ten times greater than the intended amount.[9]

43.     FDA has issued guidance on its "Concerns with Unapproved GLP-1 Drugs Used for Weight Loss," which provides that: (1) "compounded drugs are not FDA-approved"; (2) use of compounded drugs containing "semaglutide" "can be risky for patients, as unapproved versions do not undergo FDA's review for safety, effectiveness and quality"; and (3) "FDA has received reports of adverse events related to compounded versions of semaglutide . . . . However, federal law does not require state-licensed pharmacies that are not outsourcing facilities to submit adverse events to FDA so it is likely that adverse events from compounded versions of these drugs are underreported."[10]

### DEFENDANT'S FALSE ADVERTISING IN CONNECTION WITH ITS SALE OF UNAPPROVED COMPOUNDED DRUGS

44.     Despite the foregoing, Defendant makes false and misleading representations to patients regarding the nature of its Unapproved Compounded Drugs.

45.     Defendant promotes its Unapproved Compounded Drugs by operating and advertising a health clinic, including through its website.

---

[9] Joseph E. Lambson et al, *Administration Errors of Compounded Semaglutide Reported to a Poison Control Center—Case Series*, 63 J. Am. Pharmacists Assc'n 5 (2023), available at https://www.japha.org/article/S1544-3191(23)00231-5/abstract.
[10] FDA's Concerns with Unapproved GLP-1 Drugs Used for Weight Loss, https://www.fda.gov/drugs/postmarket-drug-safety-information-patients-and-providers/fdas-concerns-unapproved-glp-1-drugs-used-weight-loss.

46.    Defendant falsely advertises its Unapproved Compounded Drugs by making statements that describe Ozempic® ,Wegovy® and Rybelsus® medicines, but that are false or misleading when in reference to Defendant's Unapproved Compounded Drugs.

47.    Defendant falsely claims or implies that its Unapproved Compounded Drugs have been approved by the FDA or have been reviewed by the FDA for safety, effectiveness, and quality.

48.    On its social media, Defendant makes false and misleading representations regarding approval by the FDA. For example: "Originally used to treat Type 2 Diabetes, the FDA has approved semaglutide as a weight-loss aid when used in conjunction with a healthy diet and exercise."  *See* **Exhibit A**.





49.    Contrary to Defendant's representations, the FDA has made no such approval for "semaglutide."  Instead, the FDA has approved three of Novo Nordisk's medicines which contain semaglutide for the specific indications outlined in the preceding paragraphs.

50.    Defendant's false representations mislead customers into  believing, incorrectly, that the product with "semaglutide" offered by Defendants has been reviewed and approved by the FDA for safety and effectiveness.

51.    Defendant also falsely claims or implies that its Unapproved Compounded Drugs contain the same semaglutide that the FDA evaluated in the context of reviewing and approving Novo Nordisk's new drug applications for the Wegovy®, Ozempic®, and Rybelsus® medicines.

52.    For example, on its website, Defendant in promotional materials misleadingly refers to Plaintiffs' FDA-approved medicines in the context of discussing Defendant's

Unapproved Compounded Drugs.  Specifically, Defendant falsely claims that "[c]ommon

medications containing semaglutide include[] Wegovy®, Ozempic®, and Rybelsus®." *See*

**Exhibit B**.

**A healthy weight loss option: SEMAGLUTIDE**

If after monitoring your food and alcohol intake, and a consistent exercise routine, you just can't seem to lose those extra pounds, you're not alone — approximately 70% of American adults are obese or overweight. Even with healthy lifestyle changes, regular exercise and a balanced diet, losing weight can still be a challenging prospect for many people. Before any drastic surgeries, or fad diets, you may want to see if **semaglutide**, would be helpful for your situation.

Semaglutide is a modified version of a protein our bodies naturally produce that decreases blood sugar and appetite. When used as a medication, semaglutide has been found to be effective at lowering blood sugar and blood pressure levels as well as suppressing appetite.

Originally used to treat Type 2 Diabetes, **the FDA has approved semaglutide as a weight-loss aid** when used in conjunction with a healthy diet and exercise.

Common medications containing semaglutide include:

- Wegovy®
- Ozempic®
- Rybelsus®

Semaglutide acts as an appetite suppressant by mimicking existing hormones that interact with our digestive system. Semaglutide is a GLP-1 agonist, a type of hormone that limits how quickly your stomach empties food. By increasing these hormone levels, semaglutide keeps you feeling fuller, longer. This can help you limit your overall calorie consumption, aiding in weight loss.

In a recent study, patients took semaglutide weekly in conjunction with healthy lifestyle changes. The study group saw an average weight loss of -14.9%, a big difference compared to the placebo group, which averaged at -2.4%. In a 250 lb individual, that's the difference between 37 lbs and 6 lbs!

Please consult our office if you would like to see if Semaglutide is right for your situation.

## A New Solution: What Is Semaglutide?

Semaglutide is a modified version of a protein our bodies naturally produce that decreases blood sugar and appetite. When used as a medication, semaglutide has been found to be effective at lowering blood sugar and blood pressure levels as well as suppressing appetite.

Originally used to treat Type 2 Diabetes, **the FDA has approved semaglutide as a weight-loss aid** when used in conjunction with a healthy diet and exercise.

Common medications containing semaglutide include:

- Wegovy®
- Ozempic®
- Rybelsus®

53.     Defendant's representations characterizing Ozempic®, Wegovy®, and Rybelsus®

as "[c]ommon medications" containing "semaglutide" are misleading and falsely convey to

customers that other "semaglutide" medicines have been reviewed or approved by FDA.

54.     Novo Nordisk is not directly or indirectly supplying semaglutide to Defendant or

any compounding pharmacies from which they may be sourcing their Unapproved Compounded

Drugs.

55. The FDA has not reviewed the "semaglutide" allegedly in Defendant's Unapproved Compounded Drugs for safety, effectiveness, or quality, or otherwise as equivalent in safety, effectiveness, or quality to, Novo Nordisk's medicines.

56. Defendant has no basis to compare the "semaglutide" allegedly in its Unapproved Compounded Drugs to Novo Nordisk's FDA-approved medications containing semaglutide.

57. Defendant further falsely claims or implies that its Unapproved Compounded Drugs have been subjected to clinical studies and trials, or have otherwise achieved therapeutic outcomes attributable to the Wegovy®, Ozempic®, and Rybelsus® medicines.

58. For example, on its website, Defendant in promotional materials refers to a study that on information and belief did not involve the semaglutide product sold by Defendant: "In a recent study, patients took semaglutide weekly in conjunction with healthy lifestyle changes. The study group saw an average weight loss of -14.9%, a big difference compared to the placebo group, which averaged at -2.4%. In a 250 lb individual, that's the difference between 37 lbs and 6 lbs!" *See* **Exhibit B**.

## How Does Semaglutide Work?

Semaglutide acts as an appetite suppressant by mimicking existing hormones that interact with your digestive system. Semaglutide is a GLP-1 agonist, a type of hormone that limits how quickly your stomach empties food. By increasing these hormone levels, semaglutide keeps you feeling fuller, longer. This can help you limit your overall calorie consumption, aiding in weight loss.

In a recent study, patients took semaglutide weekly in conjunction with healthy lifestyle changes. The study group saw an average weight loss of -14.9%, a big difference compared to the placebo group, which averaged at -2.4%. In a 250 lb individual, that's the difference between 37 lbs and 6 lbs!

Name (required)
First Name          Last Name

Email (required)

Phone (required)

REQUEST A CALL BACK CONSULTATION

59.     On information and belief, Defendant has not conducted any placebo-controlled studies on its Unapproved Compounded Drugs and is instead misleadingly referring to studies of Novo Nordisk's FDA-approved medicines to promote its Unapproved Compounded Drugs.

60.     On information and belief, Defendant has engaged in these unlawful practices to attract customers and generate revenues and profits.

61.     Defendant's false and misleading statements and practices are likely to cause mistake and deception in the marketplace.

62.     Defendant's false and misleading marketing is also likely to expose patients to unnecessary risks.  Patients who mistakenly believe Defendant to be offering Novo Nordisk's FDA-approved medicines, or equivalent thereto, are unlikely to understand the unique risks associated with, or the lack of clinical trials or testing establishing the safety and effectiveness of, Defendant's Unapproved Compounded Drugs.[11]

63.     On information and belief, unless enjoined by this Court, Defendant will continue to falsely advertise its products  in violation of Plaintiffs' rights.

64.     On information and belief, unless enjoined by this Court, Defendant's conduct will continue to cause mistake and deception.

---

[11] *See, e.g.*, Dozens Say They Lost Eyesight After Routine Surgery Using Compounded Pharmacy Drugs, WFAA, https://www.wfaa.com/article/news/do-not-publish-yet/287-5f002ed3-e110-4063-9959-a2e5f54b5097 (reporting mistaken belief of patient taking a compounded drug that "every pill you take, every shot you take is tested"); FDA Alerts Health Care Providers, Compounders and Patients of Dosing Errors Associated with Compounded Injectable Semaglutide Products, https://www.fda.gov/drugs/human-drug-compounding/fda-alerts-health-care-providers-compounders-and-patients-dosing-errors-associated-compounded?utm_medium=email&utm_source=govdelivery ("Compounded drugs pose a higher risk to patients than FDA-approved drugs because compounded drugs do not undergo FDA premarket review for safety, quality or effectiveness.").

**FIRST CAUSE OF ACTION**

**Defendant's False and Misleading Advertising and Promotion
in Violation of 15 U.S.C. § 1125(a)(1)(B)**

65.     Plaintiffs reallege and incorporate each allegation in the preceding paragraphs of this Complaint as though fully set forth here.

66.     Defendant's practices, as described in this Complaint, constitute unfair competition and false advertising in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B).

67.     Defendant has violated the Lanham Act by using false or misleading descriptions of fact and false or misleading representations of fact in its commercial advertising or promotion that misrepresent the nature, characteristics, and qualities of Defendant's business practices and products, as set forth above.

68.     Defendant has also engaged in other false or misleading advertising and promotion intended to assure patients that Defendant's practices are lawful.  On information and belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs (or who Defendant is trying to persuade to purchase its drugs) information that makes false or misleading statements, including those described herein and in the exhibits hereto.

69.     The above-described acts of Defendant, if not enjoined by this Court, are likely to deceive members of the general public.

70.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm Plaintiffs.

71.     The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

72.    By reason of Defendant's acts as alleged above, Plaintiffs have suffered and will continue to suffer injuries, including injury to Plaintiffs' business reputation.

73.    Because Plaintiffs' remedies at law are not adequate to compensate for all the injuries inflicted by Defendant, Plaintiffs are entitled to entry of preliminary and permanent injunctive relief requiring Defendant to cease its false and misleading advertising and promotion and unfair competitive practices.

74.    Because the above-described acts of Defendant are willful, Plaintiffs are entitled to disgorgement of Defendant's profits (enhanced at the Court's discretion), treble damages, and costs under 15 U.S.C. § 1117.

75.    This case is exceptional, making Plaintiffs eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

### Unfair Competition in Violation of the Common Law

76.    Plaintiffs reallege and incorporate each  allegation in the preceding paragraphs of this Complaint as though fully set forth here.

77.    The above-described acts of Defendant constitute common law unfair competition.

78.    The above-described acts of Defendant unfairly and wrongfully exploit Plaintiffs' goodwill and reputation.

79.    The above-described acts of Defendant have irreparably harmed and, if not enjoined, will continue to irreparably harm the interest of the public in being free from confusion, mistake, and deception.

80.    Because Plaintiffs' remedies at law are not adequate to compensate for the injuries inflicted by Defendant, Plaintiffs are entitled to entry of preliminary and permanent

injunctive relief, in addition to monetary relief in the form of disgorgement of Defendant's

profits and corrective advertising costs.

### THIRD CAUSE OF ACTION

**Unfair Competition in Violation of the New Jersey Fair Trade Act**
**N.J.S.A. § 56:4-1 *et seq.***

81.    Plaintiffs reallege and incorporate each  allegation in the preceding paragraphs of

this Complaint as though fully set forth here.

82.    The New Jersey Fair Trade Act, N.J.S.A § 56:4-1 *et seq.*, prohibits merchants

from appropriating a name, brand, trade-mark, reputation or goodwill of any maker in whose

product such merchant, firm or corporation deals.

83.    Defendant has violated the New Jersey Fair Trade Act by using false or

misleading descriptions of fact and false or misleading representations of fact in its commercial

advertising or promotion that misrepresent the nature, characteristics, and/or qualities of

Defendant's business practices and products, as set forth above.

84.    Defendant has also engaged in other false or misleading advertising and

promotion intended to assure patients that Defendant's practices are lawful. On information and

belief, Defendant provides patients who purchase Defendant's Unapproved Compounded Drugs

(or whom Defendant is trying to persuade to purchase its drugs) information that makes several

false or misleading statements, including those described herein and in the exhibits hereto.

85.    The above-described acts of Defendant, if not enjoined by this Court, are likely to

deceive members of the general public.

86.    The above-described acts of Defendant have irreparably harmed and, if not

enjoined, will continue to irreparably harm Plaintiffs.

87.    The Court should enter preliminary and permanent injunctive relief, in addition to awarding disgorgement of Defendant's profits attributable to Defendant's statements to Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request judgment against Defendant as follows:

1.    That the Court enter a judgment against Defendant that Defendant has:

    a.    Engaged in false and misleading advertising and promotion, in violation of 15 U.S.C. § 1125(a); and

    b.    Engaged in unfair competition under the common law and violated the New Jersey Fair Trade Act, N.J.S.A. § 56:4-1 *et seq*.

2.    That the Court find that each of the above acts was willful.

3.    That the Court preliminarily and permanently enjoin and restrain Defendant and its agents, servants, employees, successors, and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendant, from:

    a.    advertising, stating, or suggesting that any Unapproved Compounded Drugs, including any Unapproved Compounded Drugs that either are available, directly or indirectly, from or through Defendant or the use of which or access to which is facilitated by, or with the involvement of, Defendant:

        i.    are, or contain, genuine or authentic Novo Nordisk Ozempic®, Wegovy® or Rybelsus® medicines;

        ii.    are sponsored by or associated with Novo Nordisk;

        iii.    are approved by the FDA; have been reviewed by the FDA for safety, effectiveness, or quality; or have been demonstrated to the FDA to be safe or effective for their intended use;

17

     iv.   achieve or have been shown or proven to achieve certain therapeutic results, effects, or outcomes, including by relying on or making reference to clinical trial results for Novo Nordisk's medicines;

     v.   achieve or have been shown or proven to achieve therapeutic results, effects, or outcomes similar or identical to Novo Nordisk's medicines or are interchangeable with or equivalent to genuine Novo Nordisk medicines;

     vi.   are associated or connected with Novo Nordisk or Novo Nordisk's medicines; or

     vii.   contain any ingredient (including semaglutide) that is supplied by Novo Nordisk, is approved by the FDA, or is the same as any ingredient in any Novo Nordisk medicine.

    b.   engaging in any unfair competition with Plaintiffs; and/or

    c.   engaging in deceptive acts or practices.

    4.     That the Court require Defendant to disclose conspicuously and prominently in any public-facing materials for any Unapproved Compounded Drugs, including all advertising, marketing, and promotional materials, that: (a) the Unapproved Compounded Drugs are compounded drugs that have not been approved by the FDA; have not been reviewed by the FDA for safety, effectiveness, or quality; and have not been demonstrated to the FDA to be safe or effective for their intended use; (b) the processes by which the compounded drugs are manufactured have not been reviewed by the FDA; and (c) FDA-approved medicines containing semaglutide are available.

5.      That the Court award Plaintiffs monetary relief in the form of disgorgement of Defendant's profits for Defendant's false advertising and unfair competition and that this monetary relief be trebled due to Defendant's willfulness, in accordance with 15 U.S.C. § 1117 and any applicable state laws.

6.      That the Court order Defendant to account for and disgorge to Plaintiffs all amounts by which Defendant has been unjustly enriched by reason of Defendant's unlawful actions.

7.      That the Court award Plaintiffs punitive damages by reason of Defendant's willful unlawful actions.

8.      That the Court award Plaintiffs pre-judgment and post-judgment interest on all damages.

9.      That the Court award Plaintiffs their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117 and any other applicable provision of law.

10.     That the Court award Plaintiffs the costs of suit incurred herein.

11.     That the Court award such other or further relief as the Court may deem just and proper.

November 8, 2024                          Respectfully submitted,
Newark, New Jersey
                                          s/ Christopher Walsh
                                          Noel L. Hillman
                                          Christopher Walsh
                                          J. Brugh Lower
                                          **GIBBONS P.C.**
                                          One Gateway Center
                                          Newark, New Jersey 07102
                                          (973) 596-4500
                                          nhillman@gibbonslaw.com
                                          cwalsh@gibbonslaw.com
                                          jlower@gibbonslaw.com